984 So.2d 738 (2008)
Leslie H. CANTRELL and Dixie Land Company of New Roads, L.L.C.
v.
Susan Mitchen COLLINS.
No. 2007 CA 1192.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Writ Denied April 25, 2008.
William C. Rowe, Jr., David C. Bolton, Baton Rouge, LA, for Defendant/Appellant, Susan Mitchen Collins.
C. Jerome D'Aquila, New Roads, LA, for Plaintiffs/Appellees, Leslie H. Cantrell and Dixie Land Company of New Roads, L.L.C.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
HUGHES, J.
This is an appeal of a "Judgment For Rule For Eviction" rendered by the 18th *739 Judicial District Court for the Parish of Pointe Coupee. The Judgment found in favor of Mr. Leslie H. Cantrell and Dixie Land Company of New Roads, L.L.C. and against Ms. Susan Mitchen Collins and ordered that Ms. Collins vacate the property at issue within twenty-four hours. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
On March 31, 2004 Leslie Cantrell purchased from Adele Bergeron Olinde and Alfred Joseph Bergeron a piece of land located along False River. An act of Cash Sale evidencing the purchase stated that a lease dated March 2, 2001 in favor of Travis Wade Singleton had been executed, but further stated that "all of the Lessees in the aforementioned leases have abandoned the property and that they have not given consent to any assignment or sublease according to the terms of any of said leases."
On April 8, 2004, Susan Collins filed a "Consent to Assignment of Lease". That document, executed and signed by Travis Wade Singleton, Alanna Perry Singleton, and Susan M. Collins on April 16, 2003 and by Adele Bergeron Olinde and Alfred Bergeron Olinde (by Adele Bergeron B. Olinde) on May 1, 2003, states that Adele Bergeron Olinde and Alfred Joseph Bergeron agreed to allow the assignment of the Singleton lease to Ms. Collins.
In February of 2005, Ms. Collins sent Mr. Cantrell a check for the lease payment for 2005.[1] However, Mr. Cantrell refused the payment. At trial he testified that because he did not believe the lease to be valid, he returned the check at that time and on January 10, 2006, he and Dixie Land Company of New Roads, L.L.C.[2] filed an action requesting that the court issue a declaration that the assignment of the lease was null and void and not effective.
On March 7, 2006 Ms. Collins also forwarded to Mr. Cantrell the 2006 lease rental payment. On March 14, 2006 a judgment issued declaring that the lease had at all times since May 1, 2001 been valid.[3] In light of the court's ruling, Mr. Cantrell then deposited the rent check dated March 7, 2006 and on April 11, 2006 Mr. Cantrell sent a certified letter to Ms. Collins. The letter both acknowledged his receipt of the 2006 rental payment and requested that she re-issue payment of the 2005 rent. In response to the demand, Mr. Cantrell testified that he received a letter from Ms. Collins' attorney advising him that Ms. Collins had issued the 2005 rental payment to Adele Olinde and that either Mr. Cantrell could collect it from Ms. Olinde or he would try to get the check back from Ms. Olinde to pay Mr. Cantrell. However, on June 14, 2006 Mr. Cantrell issued a notice to vacate the premises within five days, pursuant to LSA-C.C.P. art. 4701. Mr. Cantrell further testified that four months after sending the certified letter, he received a letter *740 from Ms. Collins's attorney enclosing a check for the 2005 rent and stating that he had gotten permission from Ms. Olinde's attorney to consider the first 2005 check lost. But Mr. Cantrell refused that payment and on November 8, 2006 filed a rule to evict. Judgment was rendered in favor of Mr. Cantrell, ordering Ms. Collins to vacate the premises within 24 hours. From that judgment, Ms. Collins appeals and makes the following assignments of error:
1) The trial court was manifestly erroneous in granting a judgment of eviction when plaintiffs offered no evidence to prove the allegations in the Rule to Evict.
2) The trial court was manifestly erroneous by granting a Rule to Evict ignoring the effect of waiver through the rejection of payment by the lessor.
3) The trial court was manifestly erroneous in not finding Mrs. Collins reasonable in tendering payment to the original lessor after rejection by Cantrell.
4) The trial court was manifestly erroneous in granting the Rule to Evict when the notices to vacate sent to Mrs. Collins were untimely according to law.
5) The trial court was manifestly erroneous in failing to honor the judicial presumption against termination of leases.

LAW AND ARGUMENT
In appellant's second assignment of error, she alleges that the trial court manifestly erred in granting the eviction because Mr. Cantrell had waived his right to eviction by his rejection of the 2005 rental payment.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The supreme court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). See also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
It is undisputed that Ms. Collins delivered to Mr. Cantrell the 2005 rent timely. Further, Mr. Cantrell admits that the payment was made and explains that he did not accept the payment, but returned the money pending the court's ruling on the declaratory action. Although we note that it does not appear that Mr. Cantrell was in "bad faith" in his choice to return the funds, we note that a declaratory action seeking to pronounce what rights and/or obligations do or do not exist under a contract does not negate or suspend those obligations in the interim. A declaratory judgment simply clarifies what rights and/or obligations exist. Therefore, because Ms. Collins was declared to have a valid lease, she had an obligation to pay the rent on or before March 1 of each year and Mr. Cantrell, likewise, had an obligation to accept the rent when tendered timely.
*741 Further, the jurisprudence establishes that a landlord cannot evict a tenant for failure to pay rent timely when the landlord is unwilling to receive the rent. Saxton v. Para Rubber Company of Louisiana, 166 La. 866, 118 So. 64 (La.1928). In Saxton, the tenant rented a business premises located next door to the landlord's business. That case also dealt with a landlord who desired to evict the tenant and had, in fact, attempted to evict the tenant once before. In this second attempt, the landlord attempted to call for his rent at the leased premises, a business that the landlord knew to be closed for that day. The tenant, however, had ready for the landlord a certified check for the rent which was available to the landlord the very next morning. Because the landlord desired to evict the tenant, he did not attempt to collect the check for the next two weeks. He then filed an action to evict the tenant for nonpayment of rent. See Saxton v. Para Rubber Company of Louisiana, 166 La. at 868-869. The court held that:
"[i]t is quite true that the payment of rent in [accordance] with the terms of the lease is one of the essential obligations of the lessee, and the failure of the lessee to properly discharge this obligation is a legal cause for dissolving the lease. But this presupposes that the lessor is desirous and willing that the lessee should pay his rent promptly, and will facilitate and not hinder him in doing so; that the lessor is not endeavoring merely to entrap his lessee into a technical breach of the lease.
The punctuality required of the lessee in the payment of his rent has been designed solely for the protection of the lessor, and cannot be allowed to be converted in his hands into a means of entrapping and oppressing the lessee. Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926, 15 Ann. Cas. 251. See, also, Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271, Bacas v. Mandot, 3 Orleans App. 324." Saxton, 166 La. at 868-869.
Although we distinguish this case in that it does not appear that the landlord was acting in bad faith as was the landlord in Saxton, we also note that in this case, Ms. Collins did in fact tender the rent timely. Mr. Cantrell's choice to seek a declaratory judgment regarding the validity of the lease does not change the fact that Ms. Collins did tender the 2005 rent timely and that Mr. Cantrell refused to accept it. And although the refusal to accept the rent did not extinguish Ms. Collins's obligation to pay that rent, Mr. Cantrell's refusal to accept it has barred him from seeking to evict her on the specific grounds of non-payment of rent for the year 2005. Put simply, Mr. Cantrell's suit for eviction alleges non-payment of the rent for 2005. The evidence establishes that Ms. Collins did, indeed, tender the rent but that it was refused by Mr. Cantrell. Mr. Cantrell's refusal of the rent is the only cause of the non-payment he alleges. He cannot cause a non-payment and then use that non-payment as a basis for eviction.
Because we conclude that appellant's second assignment of error has merit, we find it unnecessary to address appellant's remaining assignments.

CONCLUSION
The judgment of the trial court is reversed and rendered. All costs of this appeal are assessed to appellees, Leslie Cantrell and Dixie Land of New Roads, L.L.C.
REVERSED AND RENDERED.
NOTES
[1] The lease is for a term of 10 years, commencing on March 1, 2001, and terminating at midnight on February 28, 2011. The rent, in the amount of $2,250.00, is to be paid annually on the 1st day of March each year.
[2] On May 3, 2004, Mr. Cantrell executed a "Transfer to Company as Capital Contribution" wherein he purportedly transferred the False River property at issue to Dixie Land Company of New Roads, L.L.C., a company of which he is the president.
[3] The Cash Sale was executed and filed with the Clerk of Court and Recorder of Point Coupee Parish on March 31, 2004. The assignment of the lease, executed in 2003, was not recorded in the public records until April 8, 2004. While the basis for the Declaratory Judgment of March 14, 2006 is not clear, we note that it is a final judgment under LSA-C.C.P. art. 1871 and that it was not appealed.